```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                      EASTERN DISTRICT OF OKLAHOMA

THELMA J. LINVILLE,                )
                                   )
            Plaintiff,             )
                                   )
v.                                 )   Case No. CIV-12-269-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )
```

## OPINION AND ORDER

Plaintiff Thelma J. Linville (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 11, 1951 and was 59 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant worked in the past as a dialysis technician, phlebotomist, and deli cutter and slicer. Claimant alleges an

inability to work beginning January 1, 2004 due to limitations resulting from neck, back, and head injuries, strokes, congestive heart failure, depression, anxiety, and bipolar disorder.

## Procedural History

On August 17, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On November 16, 2010, an administrative hearing was conducted before ALJ Osly F. Deramus in Paris, Texas. On January 18, 2011, the ALJ issued an unfavorable decision.  On April 17, 2012, the Appeals Council denied review of the ALJ's decision.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper step four analysis; (2) failing to properly

consider the opinions of her treating physicians; and (3) failing to perform a proper credibility analysis.

### Step Four Analysis

In his decision, the ALJ found Claimant suffered from the severe impairments of neck and lower back injuries. (Tr. 16). The ALJ determined Claimant retained the RFC to perform her past relevant work as a dialysis technician, phlebotomist, and deli cutter and slicer. (Tr. 22). He also found Claimant could perform light work except that she could only occasionally stoop, crouch, crawl, kneel, balance, or climb stairs and was precluded from climbing ladders. (Tr. 19). He, therefore, concluded Claimant was not disabled. (Tr. 22-23).

Claimant first contends the ALJ should have included mental impairments in his hypothetical questioning of the vocational expert and in his step four analysis. Claimant then proceeds to recite to numerous page references in the medical record to establish she experienced a head injury, vascular changes in the brain (which is accompanied by an unexplained statement that the condition should have been evaluated under Listing § 12.02), anxiety, depression, and psychotherapeutic treatment for depression and anxiety. Claimant concludes this recitation with the curious statement that "[o]ne must but wonder why Claimant received so much

treatment for these complaints if her doctors did not consider them severe impairments."

It is unnecessary for one to wonder when the legal standard for disability is not the mere diagnosis of a condition but rather whether the condition represents an impairment which results in functional limitations. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). None of Claimant's references suggest these conditions constitute impairments which limit her ability to engage in basic work activities.

Claimant appears to have begun her treatment for mental health issues after the expiration of her insured status on December 31,

6

2008.  A mental status form was completed by Claimant's treating physician, Dr. Vivek Khetpal, on March 14, 2006.  Dr. Khetpal found Claimant was "alert & oriented x 3" and "oriented to name, place & time."  He determined Claimant could remember, comprehend and carry out instructions on an independent basis and respond to work pressure, supervision, and coworkers.  (Tr. 454).  Dr. Khetpal had maintained these findings throughout his prior treatment relationship with Claimant, despite finding Claimant to be positive for anxiety and feelings of stress but negative for mood swings or suicidal thoughts.  (Tr. 456, 458, 460, 464, 466, 468, 470, 477, 479, 482, 484, 486, 491, 494, 496, 498, 503, 509).  In a treatment record from September 27, 2005, Dr. Khetpal found Claimant to be negative for anxiety, depression, and sleep disturbances while demonstrating appropriate affect and demeanor, normal speech pattern, and grossly normal memory.  (Tr. 505-06).  On December 5, 2005, January 16, 2006, February 15, 2006, and February 17, 2006, Claimant was found to be negative for mood swings and suicidal thoughts with appropriate affect and demeanor, normal speech pattern, and grossly normal memory.  (Tr. 511-12, 514-15, 517-18, 521-22).

On July 14, 2009, Claimant reported to Dr. Ronald Gleason that she was "suicidal."  She complained of severe oppressive depression

with a plan to use a gun to end it all. (Tr. 961). Dr. Gleason diagnosed Claimant as bipolar depressed with mild psychotic symptoms and a GAF of 25. (Tr. 962). This record dates well after the expiration of Claimant's insured status.

Claimant first contends that the ALJ did not include Claimant's mental impairments in the hypothetical questioning of the vocational expert. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's questioning reflected Claimant's medically determined limitations. Nothing in the medical record would indicate Claimant suffered from a mental impairment which would affect her ability to engage in basic work activities.

Claimant next contends the ALJ did not properly analyze her

ability to engage in her past relevant work under <u>Winfrey</u>. In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996). Claimant's only assertion in this phase is that the ALJ failed to consider her mental impairments in assessing an RFC. As stated, this Court finds no mental impairment which imposes a functional limitation upon Claimant.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. <u>Id</u>. In making this determination, the ALJ may rely upon the testimony of the vocational expert. <u>Doyal v. Barnhart</u>, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work. (Tr. 56). The expert testified the dialysis technician job required light work, SVP 6, skilled. The phlebotomist job required light work, SVP 3, semi-skilled. The deli cutter and slicer job required light work, SVP 2, unskilled. <u>Id</u>. The ALJ posed hypothetical questions which mirrored the assigned RFC and the vocational expert testified that Claimant could perform this work. (Tr. 56-58). In this regard, the ALJ fulfilled his duty in the second phase. Again, Claimant's main objection to the analysis at phase two is that the ALJ did not

include mental impairments in the hypothetical questions and the vocational expert did not consider such impairments.  This argument has no merit since no mental impairments are found.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one.  <u>Winfrey</u>, 92 F.3d at 1023.  The ALJ fulfilled his obligation in the decision.  (Tr. 22).

### Consideration of Treating Physicians' Opinions

Claimant asserts the ALJ failed to consider the opinion of his treating physician, Dr. Deepak S. Jaiswal.  Dr. Jaiswal completed a form entitled "Treating Physician's Clinical Assessment" dated November 16, 2010.  He estimated Claimant could "less than occasionally" lift/carry up to 5 pounds, grasp, push and pull, or engage in fine manipulation with both hands, bend, climb, balance, stoop, kneel, crouch, or crawl.  "Less than occasionally" is defined on the form as "more than none, but less than 1/3 of an 8 hr. workday."  Dr. Jaiswal also found Claimant could stand and/or walk for less than 2 hours in a regular workday. (Tr. 1191).  He also determined Claimant could sit for less than 2 hours per regular workday, would require a 10 minutes rest period every hour to relieve fatigue arising from her medical impairments.  He

10

diagnosed Claimant with moderate status post cardiac bypass surgery, diabetes, and hypertension. Dr. Jaiswal based his findings upon "hospitalization records." He noted Claimant had moderate pain as evidenced by limitations in motion. (Tr. 1192). He also found Claimant's pain would interfere with her attention and concentration need to perform even simple work tasks. She would also be required to take unscheduled breaks from work every 3-4 hours and rest for 10 minutes, requiring her to lie down. With prolonged sitting, Claimant would also require leg elevation. She would likely experience good days and bad days and would be absent from work as a result of her impairments or treatment more than 4 days per month. (Tr. 1193).

In the printed instructions at the beginning of the first page of Dr. Jaiswal's report, it states, in pertinent part,

> It is essential that your answers be based on your clinical assessment of your patient's impairments from <u>01/23/2006</u> to the present, and NOT on non-medical factors such as your patient's age, education, work experience, job openings, hiring practices of employees, etc.

(Tr. 1191)(underlining and capitalization in original).

The ALJ acknowledged Dr. Jaiswal's assessment, although he did not identify the physician by name. He also accurately set forth Dr. Jaiswal's findings. He concluded, however, that "[u]nfortunately, the basis of this physician's assessment is the

11

time period after the claimant's date last insured.  Therefore, his opinion is given no weight."  (Tr. 21).

Defendant argues that the statement on the form pertaining to the findings' relation back to January 23, 2006 "appear[s] to have been picked by Plaintiff's agency representative, not the doctors." Defendant cites no foundation for this statement and the ALJ did not employ this reasoning in rejecting Dr. Jaiswal's opinion and giving it "no weight."  The case must be remanded for the ALJ to re-evaluate Dr. Jaiswal's opinion, including whether the findings relate back to 2006, within the insured period.  He shall utilize the factors for weighing the opinion in Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  Should the ALJ have a question as to whether Dr. Jaiswal's findings apply during the relevant period or whether the physician intended for the findings to apply to this period, he should recontact Dr. Jaiswal and ascertain his intent.

Claimant also asserts the ALJ should have considered the opinion of her cardiologist Dr. Khetpal.  He found in a single record from August 9, 2006 that he believed Claimant was "a good candidate for consideration of long-term disability due to her multiple medical problems that stems from bypass."  He also found Claimant "is able to walk only limited due to her chronic back

pain." (Tr. 711). While this statement certainly pertains to a matter for the Commissioner to consider, it is entitled to consideration. This Court recognizes that the statement is only a proposal of possible disability and not a finding but the ALJ shall give it the consideration that it is due on remand.

### Credibility Determination

Claimant contends the ALJ failed to follow the required analysis of her credibility. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.   Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures

other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ recited the inconsistencies in Claimant's stated limitations and the medical record of her treatment. (Tr. 19-21). This fulfilled the required affirmative linkage of the findings on credibility and the evidence contained in the record. In particular, Claimant's allegations of debilitating pain are dampened by the finding of the ALJ that she found relief with the use of a trial spinal stimulator but declined to have a permanent stimulator put in place. (Tr. 21, 706, 709). This choice does demonstrate an inconsistency in her level of her pain allegations. This Court finds no error in the ALJ's credibility assessment.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is

**REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 26th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE